**Willard BURNAP, Appellant,**

v.

**Lawrence R. LINNARTZ; Ingram Linnartz & Reynolds, P.C.; William R. Rork; and McCamish & Martin, P.C., Appellees.**

No. 04–94–00303–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 31, 1995.

Rehearing Overruled Oct. 6, 1995.

issues must be submitted to a jury. We find, however, that Burnap's claims against appellees William Rork and McCamish & Martin, P.C. are barred by the statute of limitations. We therefore affirm in part and reverse and remand in part.

## STANDARD OF REVIEW

■ We review the trial court's judgment under well-established summary judgment rules. The movant in a summary judgment proceeding has the burden of showing that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. In deciding whether a disputed material fact issue precludes summary judgment, we must take as true all evidence favoring the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in its favor. *Id.; Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In the instant case the trial court did not enumerate the grounds upon which summary judgment is based, thus the judgment will be affirmed if any of the theories advanced in appellees' motions are meritorious. *See Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

Paul E. Knisely, Broadus A. Spivey, Thomas P. Prehoditch, Spivey, Grigg, Kelly & Knisely, Austin, for appellant.

James E. Ingram, James M. Parker, Jr., Butler & Binion, L.L.P., Damon Ball, Ryan G. Anderson, Ball & Weed, P.C., J. Patrick Deely, Bennett L. Stahl, McCamish & Martin, P.C., San Antonio, Joe W. Matthews, Smith & Moore, Dallas, Jonathan David Pauerstein, Lopez & Pauerstein, P.C., San Antonio, for appellees.

Before CHAPA, C.J., and STONE and GREEN, JJ.

## OPINION

STONE, Justice.

This is an appeal from a summary judgment entered in favor of the defendant lawyers in a legal malpractice action. The appellant, Willard Burnap, contends numerous unresolved fact issues preclude summary judgment. We agree that material issues of fact remain regarding the existence of an attorney-client relationship, and that these

## FACTUAL BACKGROUND

A review of the record in the light most favorable to appellant discloses the following facts: In 1984 Walter Burnap, Lester Kelly, Max Burleson, and Daniel Linnartz formed a general partnership, Kittie Partners 1984–1 ("KP 1984–1"). Walter Burnap, who held an 80% interest in the partnership, executed a $3.2 million note payable to First South Savings Association ("First South Savings"). Each of the partners signed a personal guarantee of the note, and the partnership itself ultimately became an obligor on the note. In 1985 Willard Burnap, father of Walter Burnap, became a partner retroactive to August 1984. Willard never signed a personal guarantee on the First South Savings note.

In 1986 Daniel Linnartz and Max Burleson decided to withdraw from KP 1984–1. Wal-

ter Burnap contacted Daniel Linnartz' brother, Lawrence Linnartz, and engaged his law firm to draft the necessary paperwork for the withdrawal. Because the transaction involved his brother, Linnartz asked an associate, William Rork, to perform the legal work. Rork prepared a Mutual Release and Indemnity Agreement ("the indemnity agreement") for all partners to sign. The indemnity agreement provided that KP 1984-1 through its remaining partners (Walter Burnap, Willard Burnap and Lester Kelly) would indemnify Daniel Linnartz and Burleson for any liability that the withdrawing partners may have undertaken to pay as guarantors on behalf of KP 1984-1. The indemnity agreement purported to comply with the partnership agreement, which provided for several alternatives in the event of partner withdrawal.

Rork and Lawrence Linnartz presented summary judgment evidence that the partners had agreed to all terms of the withdrawal, and that Rork was merely the "scrivener" who reduced the agreed terms to writing. Appellant Burnap presented summary judgment evidence that he and his son Walter relied on the legal expertise of Lawrence Linnartz and Rork in preparing the appropriate documents to effectuate the withdrawal of Daniel Linnartz and Burleson. Both Burnaps expected that Lawrence Linnartz and Rork would protect their individual interests or explain any conflicts as they related to and were affected by partnership matters. Appellant signed the indemnity agreement as a partner only, not individually. It is undisputed that neither Rork nor Lawrence Linnartz ever presented any partner of KP 1984-1 with a conflicts letter or memorandum outlining the possible conflicting positions that could arise upon execution of the indemnity agreement. Neither Rork nor Lawrence Linnartz could explain why such a conflicts letter was not prepared and presented to the partners. Rork did recall informally discussing possible conflicts with Walter Burnap. But he never had a similar conversation with Willard Burnap since Rork never saw, spoke with, or personally met Willard Burnap during the time he performed legal services relating to KP 1984-1.

On January 1, 1988, Willard Burnap sold his entire interest in KP 1984-1 to his son. Walter Burnap in turn dissolved the partnership and sold its assets to Kittie Petroleum, Inc. Again, Rork prepared the documentation, but this time he prepared a conflicts letter outlining to each Burnap the possible conflicts of interest that could arise from the transaction. There is no evidence that this conflicts letter was ever presented to the Burnaps.

Also in January 1988, First South Savings executed a release negotiated by William Rork, stating that it released from liability on the KP 1984-1 note all former partners, with the exception of Walter Burnap and any person who had signed a personal guarantee on the note. Willard Burnap was the only former partner who had not signed a personal guarantee on the note. Rork testified in his deposition that the intent of the release was to protect Willard Burnap from liability on the First South Savings note.

In 1989 Kittie Petroleum, Inc. filed for bankruptcy and defaulted on the First South Savings note. After foreclosing on collateral, a deficiency of $1.3 million remained. First South Savings itself then became insolvent and its successor, the FDIC and later the RTC, filed suit in federal court against KP 1984-1, and each of the individuals who had signed personal guarantees: Walter Burnap, Daniel Linnartz, Max Burleson, and Lester Kelly.

Lawrence Linnartz represented Daniel Linnartz and Max Burleson in negotiating a settlement with the RTC. Information regarding Willard Burnap, the 1986 indemnity agreement, and the history of the partnership was provided to the RTC, although at least some of this information was presented by Daniel, not Lawrence Linnartz. By the terms of the settlement agreement, Daniel Linnartz and Burleson agreed to assign to the RTC their rights under the indemnity agreement against KP 1984-1 and Walter Burnap, and granted an agreed judgment to the RTC for the full amount of the loan deficiency. The RTC in turn promised not to enforce the judgment against Daniel Linnartz and Burleson unless the RTC was wholly unsuccessful in its efforts to collect

under the indemnity agreement assignment. In the event of such lack of success, Daniel Linnartz and Burnap agreed to pay the RTC a total sum of $25,000.

Following this settlement agreement, the RTC added Willard Burnap as a defendant in the federal suit. Walter Burnap and Lester Kelly filed for bankruptcy and were dismissed from the suit. Summary judgment for the full amount of the deficiency was entered against KP 1984–1 and Willard Burnap in favor of First South Savings, and that ruling was affirmed by the Fifth U.S. Circuit Court of Appeals. The case was remanded to the trial court for a review of the fairness of the underlying settlement. The district court ruled that the settlement entered into by the RTC, Daniel Linnartz and Burleson was fair, and this ruling was also affirmed by the Fifth Circuit.

The instant litigation was initiated by Willard Burnap against Lawrence Linnartz and William Rork, who were both attorneys in the firm of McCamish, Ingram, Martin & Brown, P.C. ("the McCamish firm") until 1988. The McCamish firm was named as a defendant, as was the new firm formed by Linnartz in 1988, Ingram, Linnartz & Reynolds, P.C. ("the Linnartz firm"). Appellant's trial pleading alleges several causes of action against appellees: professional negligence and legal malpractice; fraud and deceit; breach of fiduciary duties and constructive fraud; breach of contract; breach of the implied covenants of good faith and fair dealing; violations of the Deceptive Trade Practices Act and unconscionable course of conduct; and intentional infliction of emotional distress.

Appellees filed motions for summary judgment on numerous grounds. The trial court entered three separate general summary judgments in favor of Rork, the McCamish firm, and both Linnartz and the Linnartz firm respectively.

## STATUTE OF LIMITATIONS

Appellees Rork and the McCamish firm sought summary judgment based in part on their claim that Burnap's suit was barred by limitations. Burnap was sued by the RTC in February 1990, and judgment was entered against him in October 1990. Burnap sent a demand letter to Lawrence Linnartz in November 1990, and initiated suit against Linnartz and the Linnartz firm a year later. Rork and the McCamish firm were not added as defendants until September 1993.

Rork and the McCamish firm contend that Burnap's suit is barred by the two year statute of limitations. As to his legal malpractice claim, Burnap contends the statute of limitations does not begin to run until completion of the underlying federal lawsuit brought against him by First South Savings, alleging that the amount of his damages cannot be ascertained until the federal judgment becomes final for all purposes. In support of his argument Burnap relies upon *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991) and *Gulf Coast Inv. Corp. v. Brown*, 821 S.W.2d 159 (Tex.1991).

■ We do not agree with Burnap's interpretation of these cases. *Hughes* articulates a narrow tolling doctrine, applicable only when a lawyer commits malpractice in litigation of a claim or defense. *Hughes v. Mahaney & Higgins*, 821 S.W.2d at 156–57 ("Limitations are tolled for the second cause of action because the viability of the second cause of action depends on the first."); *Hoover v. Gregory*, 835 S.W.2d 668, 675 (Tex. App.—Dallas 1992, writ denied) (*Hughes* is to be narrowly interpreted and applies only to claims arising out of litigation). *Gulf Coast* likewise applies to *prosecution* of a claim in a non-judicial foreclosure sale. *Gulf Coast Inv. Corp. v. Brown*, 821 S.W.2d at 160.

■ In the instant case there is no malpractice alleged in connection with prosecution or defense of a claim. Rather, Burnap claims appellees committed malpractice in connection with preparation and execution of partnership and corporate documents. The rationale for the *Hughes* tolling doctrine, to prevent the client from being forced into adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case, simply is inapplicable in the present context. *See Ponder v. Brice & Mankoff, P.C., et al.*, 889 S.W.2d 637, 643–44 (Tex.App.—Houston [14th Dist.] 1994, no

writ) (*Hughes* tolling provision inapplicable when alleged malpractice regards advice of tax consequences of tax shelter investments).

Burnap further contends that the four year statute of limitations applies to his claims for breach of contract, fraud, and breach of fiduciary duty. Burnap's argument is not supported by case law. Malpractice claims against lawyers are governed by a two year statute of limitations, regardless of the label attached to the claims. *See Estate of Degley v. Vega,* 797 S.W.2d 299, 302–03 (Tex.App.—Corpus Christi 1990, no writ); *Willis v. Maverick,* 723 S.W.2d 259, 261 (Tex. App.—San Antonio 1986), *aff'd,* 760 S.W.2d 642 (Tex.1988); *Gabel v. Sandoval,* 648 S.W.2d 398, 399 (Tex.App.—San Antonio 1983, writ dism'd). Separating a claim for legal malpractice into claims for negligence, breach of contract, fraud, or other names does not change the underlying fact that the claims are based on professional negligence and are governed by the two year limitations statute. *See Sledge v. Alsup,* 759 S.W.2d 1, 3 (Tex.App.—El Paso 1988, no writ). As previously stated by this Court, "[w]hatever label is placed on it, a suit for legal malpractice is in the nature of a tort action and thus the two year statute of limitations governs." *Willis v. Maverick,* 723 S.W.2d at 261.

The discovery rule applies to legal malpractice claims. Pursuant to this rule the limitations period is tolled until the plaintiff discovers or should have discovered the nature of his injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). Burnap should have suspected in February 1990 when First South Savings sued him that he was not insulated from liability on the note executed by KP 1984–1. In October 1990 when judgment was entered against Burnap for the $1.3 million deficiency, Burnap's suspicions certainly would have been confirmed. He sent a demand letter to Lawrence Linnartz a month after the judgment, stating his claim for malpractice. Although Burnap timely sued Linnartz and the Linnartz firm in 1991, he did not join Rork and the McCamish firm as defendants until September 1993. Burnap failed to timely institute his suit against William Rork and the McCamish firm, therefore the trial court

properly entered summary judgment for these two defendants. Point of error eleven is overruled.

## ATTORNEY–CLIENT RELATIONSHIP

Linnartz and the Linnartz law firm moved for summary judgment on the grounds that no attorney-client relationship was ever established between them and Willard Burnap. Consequently, Linnartz argued that he owed no legal duty to Burnap, and his conduct could not be the breach of a legal duty proximately causing damages to Burnap. Further, the Linnartz firm alleged that it was not even in existence at the time the indemnity agreement was drafted by Rork and executed by Willard Burnap.

On appeal Burnap counters that despite the lack of direct contact between himself and Linnartz, an attorney-client relationship was established. Burnap contends that at the very least, Linnartz should have advised him of potential conflicts arising from changes in the partnership, and of the need for independent counsel.

Absent fraud or collusion, an attorney owes a duty only to those parties in privity of contract with the attorney. *Berry v. Dodson, Nunley & Taylor, P.C.,* 717 S.W.2d 716, 718 (Tex.App.—San Antonio 1986), *judgm't vacated by agr.,* 729 S.W.2d 690 (Tex.1987). Thus a non-client generally has no cause of action against an attorney for negligent performance of legal work. *Parker v. Carnahan,* 772 S.W.2d 151, 156 (Tex.App.—Texarkana 1989, writ denied). An attorney-client relationship may be implied in some cases from the conduct of the parties. *E.F. Hutton v. Brown,* 305 F.Supp. 371, 388 (S.D.Tex. 1969); *Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627, 633 (Tex.App.— Amarillo 1983, writ ref'd n.r.e.).

Even in the absence of an attorney-client relationship, an attorney may be held negligent for failing to advise a party that he is not representing the party. *Kotzur v. Kelly,* 791 S.W.2d 254, 258 (Tex.App.—Corpus Christi 1990); *Parker v. Carnahan,* 772 S.W.2d at 157. Generally such negligence cannot be established in the absence of evidence that the attorney knew the party had

assumed that he was representing them in a matter. *See Dillard v. Broyles,* 633 S.W.2d 636, 643 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.), *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983). If circumstances lead a party to believe that they are represented by an attorney, however, the attorney may be held negligent for failing to advise that party of the attorney's non-representation. *E.F. Hutton v. Brown,* 305 F.Supp. at 396; *Parker v. Carnahan,* 772 S.W.2d at 157; *Rice v. Forestier,* 415 S.W.2d 711, 713 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.). The factfinder must determine whether the attorney was aware or should have been aware that his conduct would have led a reasonable person to believe that the attorney was representing that person. *Parker v. Carnahan,* 772 S.W.2d at 157.

It is undisputed that there was no contract between any of the appellees and Willard Burnap. Both Rork and Lawrence Linnartz acknowledge they represented the KP 1984–1 partnership, but they deny representing Burnap individually. Linnartz did not draft the indemnity agreement, nor did he draft any of the documents related to the transfer of partnership assets to Kittie Petroleum, Inc. These documents were prepared by Rork, who was employed by the McCamish firm at a time when Linnartz was still a partner in the firm. Linnartz received copies of the documents from Rork, although he did not remember reviewing any of them. He was listed in the firm records as the originating or billing attorney for the work done relating to both the partnership and the corporation.

Burnap testified that Linnartz and the McCamish firm represented his interests in both the partnership withdrawal transaction involving Burleson and Daniel Linnartz, and in the later transfer of KP 1984–1 assets to Kittie Petroleum, Inc. Burnap apparently based his conclusion on the fact that Rork prepared numerous documents for his signature in connection with these two transactions which affected his individual interests. Burnap further testified that he received no notice that the appellees did not represent his personal interests, that he was never informed his interests might be adverse to the interests of others involved in the various transactions, and that he was shocked when he learned that Lawrence Linnartz represented his brother Daniel in negotiating a settlement with First South Savings. Both Linnartz and Burnap testified that Linnartz neither requested nor received a waiver from Burnap allowing him to represent Daniel Linnartz. When asked if appellees ever represented Burnap individually, Burnap responded, "[a]s a partner he did. That's all I can say." Burnap and Rork both testified, however, that Rork prepared the First South Savings release with the specific intent to insulate Willard Burnap from individual liability on the note.

Walter Burnap testified by affidavit that he told his father when he joined the partnership that Linnartz and the McCamish firm were representing the partnership "and our interests in the partnership." Walter retained Lawrence Linnartz to provide legal services for other business entities with which he and his father were involved. Linnartz indicated he might delegate some tasks to associates, but that he would be the supervising attorney. Walter Burnap further testified that Linnartz continued to give the partnership and the individuals involved in the partnership legal counsel even after he left the McCamish firm. Because of representations Linnartz made to Walter Burnap, he trusted Linnartz to inform him of any conflicts or potential adverse relationships that would occur with various partnership transactions.

Willard Burnap presented the affidavit of attorney Terry Kenyon as part of his controverting summary judgment proof. Kenyon opined that appellees represented Willard Burnap individually and as a partner in KP 1984–1, and that they were negligent in such representation. Kenyon also stated that appellees created a situation in which Willard Burnap was entitled to believe, and could reasonably believe, that the attorneys would consider and protect the individual interests of the Burnaps, or at least advise them of the need to seek independent counsel. Kenyon stated that appellees were negligent in failing to advise the partners of the potential con-

flicts upon withdrawal of two partners and in failing to effectuate a release of Willard Burnap's liability to First South Savings. Finally, Kenyon concluded that Lawrence Linnartz was negligent in representing Daniel Linnartz and Max Burleson in the First South Savings lawsuit and in utilizing for Daniel's benefit appellees' failure to protect Willard Burnap from liability in the First South Savings release.

■ The summary judgment evidence outlined above reveals the existence of a fact question about the attorney-client relationship between appellees and Willard Burnap. Texas has adhered to the entity theory of partnership since the Texas Uniform Partnership Act was enacted in 1961, thus an attorney's representation of a partnership does not necessarily include representation of the individual partners. TEX.REV.CIV.STAT. ANN. art. 6132b, § 1 cmt. (Vernon Supp. 1995); *Haney v. Fenley, Bate, Deaton and Porter*, 618 S.W.2d 541, 542 (Tex.1981). While the evidence of representation of Burnap individually is not conclusive, at the very least a fact issue is raised by Rork's candid admission that the specific intent of the First South Savings release was to protect Willard Burnap from individual liability. Since we must view the evidence in the light most favorable to Burnap and indulge in every reasonable inference in his favor, we conclude that a material issue of fact remains on the issue of existence of the attorney-client relationship. *See Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d at 633. Similarly, fact issues exist regarding whether, under the circumstances presented, appellees committed malpractice in failing to issue a conflicts letter in connection with the indemnity agreement and in failing to obtain a waiver from Willard Burnap before representing two former partners in negotiating their settlement on the First South Savings note. Ordinarily there is nothing improper about an attorney representing more than one interest "so long as the attorney discloses the consequences of the joint representation to all of his clients, and all parties as well as the attorney consent." *E.F. Hutton v. Brown*, 305 F.Supp. at 388.

■ Additionally, there is an alternative fact issue on whether the attorneys were negligent in failing to advise Willard Burnap that they did not represent him. *See Kotzur v. Kelly*, 791 S.W.2d at 258. Since Burnap failed to timely assert his claim against Rork and the McCamish firm he is not entitled to proceed against them. We express no opinion on the continued viability of his claim against Linnartz and the Linnartz firm now that Rork and the McCamish firm are removed from the litigation. Points of error one through four, nine and ten are sustained.

### STANDING

Linnartz filed a plea in abatement contending that Burnap filed suit as a partner or ex-partner, and that he was not entitled to recover in that capacity because Burnap sold his partnership interest in 1988. Linnartz claimed that the cause of action for legal malpractice could only be held by the partnership itself. The plea in abatement was denied based upon Burnap's statements in open court that he was not seeking recovery as a partner or ex-partner of KP 1984–1.

In his motion for summary judgment Linnartz urged that Burnap lacked standing because Burnap's liability on the First South Savings note was created solely by reason of Burnap's execution of the indemnity agreement, which he did as a partner of KP 1984–1. Since Burnap had declared in open court that he sought recovery solely in his individual capacity, Linnartz argued that Burnap's conduct as a partner could not form the basis for any action or recovery.

■ The federal court opinions affirming the judgment against Burnap clearly indicate that Burnap's liability on the First South Savings note arises by virtue of his execution of the indemnity agreement, which he did only as a partner of KP 1984–1. That fact, however, does not preclude Burnap's malpractice action. Burnap has alleged that appellees committed malpractice by preparing the indemnity agreement for his signature without advising him of the conflicts that could arise from his execution of the agreement. A fact issue exists as to whether the circumstances were such that Burnap could reasonably believe that an attorney-client relationship existed between himself and appellees. *See Rice v. Forestier*, 415 S.W.2d at

713. Likewise, Burnap's expert stated in his affidavit that under the circumstances, a conflicts letter should have been issued to the partners when the indemnity agreement was presented to them. Rork could not explain why one had not been prepared, and he acknowledged that one had been prepared but not presented under similar circumstances when Burnap transferred his partnership interest to Kittie Petroleum, Inc.

Linnartz' standing argument fails for the additional reason that Burnap's claim is based in part on his allegation that appellees committed malpractice by failing to secure his immunity from liability on the First South Savings note, which was the specified purpose of the release agreement prepared by Rork. As discussed above, the conduct of Rork in preparing the release, which he admits was drafted to protect Burnap, raises a fact issue about whether appellees undertook to provide Burnap with individual representation.

■ Further, although the federal opinions upholding the judgment against Burnap clearly indicate that his liability on the First South Savings note arises by virtue of his conduct as a former partner in KP 1984–1, his liability as a judgment debtor is not somehow limited to his status as a former partner. A partner in a general partnership is personally liable for partnership debts jointly and severally with all other partners. *Gray v. F.D.I.C.*, 841 S.W.2d 72, 82 (Tex. App.—Houston [1st Dist.] 1992), *judgm't vacated by agr.*, 848 S.W.2d 85 (Tex.1993). Burnap is individually liable for the full amount of the judgment. Burnap is entitled to pursue his cause of action in his individual capacity, and he is entitled to recover if he can prove that the judgment against him was proximately caused by the malpractice of appellees. The trial court could not properly enter summary judgment for Linnartz on the basis of standing. Points of error five and six are sustained.

### CONSUMER STATUS UNDER THE DTPA

■ In his seventh and eighth points of error Burnap contends the trial court erred in granting summary judgment because the appellees did not conclusively establish that Burnap was not a consumer of appellees' legal services under the Deceptive Trade Practices Act. Appellees never requested summary judgment on this specific ground. Appellees contended that an attorney-client relationship never existed between them and Burnap, and so perhaps inferentially it can be said that the issue of consumer status was raised. However, summary judgment can only be granted on grounds specifically requested in writing and presented to the trial court. See *410/West Ave. Ltd. v. Texas Trust Savings Bank, F.S.B.*, 810 S.W.2d 422, 424 (Tex.App.—San Antonio 1991, no writ). Since consumer status under the DTPA was not even mentioned in the motions for summary judgment, we conclude that the trial court did not grant summary judgment on this basis.

Based upon the foregoing, we affirm the judgment of the trial court as to appellees William Rork and McCamish & Martin, P.C. We reverse the summary judgment granted in favor of Lawrence Linnartz and Ingram, Linnartz & Reynolds, P.C., and remand the cause to the trial court for trial.

CHAPA, Chief Justice, concurring and dissenting.

I concur with the majority opinion in affirming the summary judgment as to appellees William Rork and McCamish & Martin, P.C. However, I respectfully dissent with the holding of the majority that reverses and remands the summary judgment as to appellees Lawrence Linnartz and Ingram, Linnartz & Reynolds, P.C., for the following reasons. For purposes of this opinion, I will hereafter address William Burnap as appellant, and Lawrence Linnartz and Ingram, Linnartz & Reynolds, P.C., as appellees.

### SUMMARY JUDGMENTS

The standard of review in a summary judgment case is whether the movant met its burden for summary judgment by establishing there exists no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). When a trial court's order granting summary judgment does not specify the ground relied

on, we may affirm the judgment on appeal if any of the theories advanced are meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

## LEGAL MALPRACTICE

A legal malpractice action in Texas is based on negligence. *Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989). The elements of a legal malpractice claim are: (1) a duty, (2) a breach of duty, (3) the breach proximately caused the injury, and (4) resulting damages. *Id.* at 665. When a legal malpractice claim arises from prior litigation, the plaintiff has the burden to prove that but for the attorney's negligence, he or she would be entitled to judgment, and to show what amount would have been recovered in the judgment. *Jackson v. Urban, Coolidge, Pennington & Scott,* 516 S.W.2d 948, 949 (Tex. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.); *see MND Drilling Corp. v. Lloyd,* 866 S.W.2d 29, 31 (Tex.App.—Houston [14th Dist.] 1987, no writ). In Texas, a lawyer is held to the standard of care that would be exercised by a reasonably prudent attorney. *Veschi v. Stevens,* 861 S.W.2d 291, 292 (Tex. App.—San Antonio 1993, no writ). Therefore, expert testimony of an attorney is necessary to establish this standard of skill and care ordinarily exercised by an attorney. The plaintiff is then required to controvert the expert testimony with other expert testimony. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991). Generally, an attorney only owes a duty to a party in privity of contract with the attorney. *Berry v. Dodson, Nunley & Taylor, P.C.,* 717 S.W.2d 716, 718 (Tex. App.—San Antonio 1986), *judgm't vacated by agr.,* 729 S.W.2d 690 (Tex.1987). Therefore, one who is not a client has no cause of action against an attorney for legal malpractice. *Parker v. Carnahan,* 772 S.W.2d 151, 156 (Tex.App.—Texarkana 1989, writ denied).

## ADMISSIONS

An admission, also known as an extrajudicial admission or an admission against interest, is " 'any statement made or act done by one of the parties to any action or on his behalf which amounts to a prior acknowledgement by such party that one of the facts relevant to the issues is not as he now claims.' " *Hartford Accident & Indem. Co. v.*

*McCardell,* 369 S.W.2d 331, 337 (Tex.1963) (quoting 2 MCCORMICK & RAY, TEXAS LAW OF EVIDENCE § 1121). This type of admission serves as a "two-pronged assault on the admitter's case": (1) "[a]s a true exception to the hearsay rule they prove the truth of the facts admitted," and (2) "since by definition they are inconsistent with the admitter's testimony at trial, they tend to impeach his credibility." *Id.*

## JUDICIAL ADMISSIONS

On the other hand, "[a] judicial admission is: (1) a statement made during the course of a judicial proceeding, (2) that is contrary to an essential fact or defense asserted by the person giving the testimony, (3) that is deliberate, clear, and unequivocal, (4) that, if given conclusive effect, is consistent with public policy on which the rule is based, and (5) that is not destructive of the opposing party's theory of recovery." *Catherman v. First State Bank,* 796 S.W.2d 299, 302 (Tex.App.—Austin 1990, no writ). "In other words, the [judicial admission] must be one relating to a fact upon which a judgment in favor of the opposing party may be based." *United States Fidelity & Guar. Co. v. Carr,* 242 S.W.2d 224, 229 (Tex.App.—San Antonio 1951, writ ref'd). "[Live] pleadings of a party are regarded as formal judicial admissions [and] any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence." *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983). The judicial admission doctrine is not limited in its application to oral testimony, but encompasses "any sworn statement—whether oral or written—made in the course of a judicial proceeding." *Miller v. Mac Gann,* 842 S.W.2d 641, 641 (Tex.1992). "The vital feature of a judicial admission is its conclusiveness on the party making it. It not only relieves that party's adversary from making proof of the fact admitted but also bars the party from disputing it." *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 733 (Tex.App.—Corpus Christi 1994, writ denied).

Among other things, the summary judgment evidence generally established that appellant never had a contract of employment with the appellees; that appellees deny representing appellant individually at any time;

that appellees had nothing to do with the legal representation that resulted in the general partnership known as Kittie Partners 1984–1 ("KP 1984–1"); that appellees had nothing to do with the transaction that resulted in the original partners becoming personal guarantors of a $3.2 million note payable to First South Savings Association; that appellees had nothing to do with appellant later becoming a partner in KP 1984–1 in 1985;[1] that in 1986, when partners Daniel Linnartz and Max Burleson decided to withdraw from the partnership, they complied with the partnership provisions for withdrawing and reached an agreement with the remaining partners; that Daniel Linnartz and Max Burleson contacted the appellee law firm of McCamish & Martin, P.C., to put the agreement in legal form; that although appellee Lawrence Linnartz, brother of Daniel Linnartz, was a member of the McCamish & Martin law firm at the time, he made known his conflict of interest concern by refusing to participate in the legal representation; that as a result, appellee Rork, another member of the firm, assumed the legal representation and reduced the agreement of the partners to a Mutual Release and Indemnity Agreement which was signed by all the partners; that at that time and thereafter until 1988, the appellee firm of Ingram, Linnartz & Reynolds, P.C., did not exist; that appellant never had any direct contact with any of the appellees regarding legal representation either individually or as a partner or expartner; and that it is the legal representation surrounding the Mutual Release and Indemnity Agreement which is the center of this dispute.

Specifically, appellant's pleadings reflect that his legal malpractice cause of action against all appellees is based solely on allegations that appellees breached a duty to him arising from the legal representation surrounding the Release and Indemnity Agreement. Appellant has never alleged that he individually or as a partner or expartner directly sought or obtained legal representation from any of the appellees. Indeed, the summary judgment evidence clearly reflects that, in fact, appellant never had any direct contact with any of the appellees regarding legal representation. The thrust of appellant's allegations are that because he was a partner at one time in KP 1984–1, he was indirectly owed a duty by the appellees. In fact, appellant's deposition reflects the following question and answer:

Q. Okay. Did Larry Linnartz ever represent you individually in any transaction? I'm talking about Willard Burnap, individually, not as a partner to Kittie?

A. As a partner he did. That's all I can say.

On the other hand, the record reflects that appellees filed a plea in abatement contending that appellant was not entitled to recover in the capacity in which he sued (as a partner or expartner of KP 1984–1) because he had previously transferred all rights and liabilities back to the partnership by a bill of sale executed when he ceased to be a partner on January 1, 1988.[2] In appellant's sworn judicial pleadings responding to the plea of abatement, appellant states the following:

Contrary to the claims made by Defendants, the right to bring this lawsuit is not a partnership right and does not arise from partnership interests. The right to pursue this legal malpractice action arises out of the attorney-client relationship that existed between Willard Burnap and Defendant Larry Linnartz.

The record also reflects that appellant thereafter, in an open court plea in the abatement hearing, reiterated his judicial admission that his cause of action against appellees was not grounded on legal representation as a partner or expartner of KP 1984–1. Appellant's open court judicial admission was so convincing that it caused the trial judge to enter an order on September 30, 1993, denying the plea in abatement, specifically "based upon Plaintiff's statements in open court that they were not seeking relief as a partner or expartner of the partnership known as KP 1984–1."

1. In fact, the evidence reflects that appellant became a partner in the partnership only because of the urgings of his son Walter, who convinced him of the tax advantages involved for appellant.

2. This contention is uncontroverted.

Undoubtedly, the judicial admissions doctrine has been invoked here. Appellant's pleadings, sworn response to the plea in abatement, deposition answers, and open court statements to the trial court during the plea in abatement hearing are judicial admissions because (1) they were "made during the course of a judicial proceeding," (2) they were contrary to an essential fact asserted by the appellant, (3) they were "deliberate, clear, and unequivocal," (4) the conclusive effect is consistent with public policy, *Catherman*, 796 S.W.2d at 302, and (5) they were judicial admissions relating to a fact upon which a summary judgment in favor of appellees may be based. *United States Fidelity & Guar. Co.*, 242 S.W.2d at 229. Appellant's pleadings, including his sworn response to the plea in abatement, were "live pleadings" of appellant which are "regarded as a formal judicial admission [and] any facts admitted [are] conclusively established in the case without the introduction of the pleadings or presentation of other evidence." *Houston First American Sav.*, 650 S.W.2d at 767. The judicial admissions clearly involved oral testimony in sworn deposition and before the trial court, and written sworn pleadings, all "made in the course of a judicial proceeding." *Miller*, 842 S.W.2d at 641. Appellant's judicial admissions concede that the only legal representation he can complain about existed as a result of his status as a partner or expartner of KP 1984–1. However, appellant's judicial admissions also concede that he is not seeking any relief from damages resulting from any legal representation that existed as a result of his status as a partner or expartner of KP 1984–1.

Thus, by these judicial admissions, appellant established conclusively that the basis for the cause of action he has chosen to pursue against the appellees is without merit, and must fail by his own admissions. Therefore, appellees are entitled to summary judgment as a matter of law, since appellant's judicial admissions not only relieved appellees from making proof of the fact admitted but also barred appellant from disputing them. *Herschbach*, 883 S.W.2d at 733.

Since this meritorious theory was properly advanced by appellees, the trial court correctly granted the summary judgment. *Rogers*, 772 S.W.2d at 79.

I would affirm the summary judgment.