COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-325-CV

 

 

JERRY BERGTHOLD                                                             APPELLANT

 

                                                   V.

 

WINSTEAD
SECHREST &                                                         APPELLEE

MINICK, P.C.

 

                                              ------------

 

           FROM THE 236TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION








This is a legal malpractice case.  Appellant Jerry Bergthold appeals from the
trial court=s grant of summary judgment in
favor of Appellee Winstead Sechrest & Minick, P.C. (Winstead).  Because the summary judgment evidence
conclusively negates the existence of any attorney-client relationship, as well
as the existence of Bergthold=s
expectation of representation by Winstead, we will affirm.

                                    II.  FACTUAL BACKGROUND

Bergthold was an employee of Southwestern Bell
Yellow Pages (SWBYP).  Another SWBYP
employee, Virgil Bingham, sued SWBYP for defamation.[2]  Jarrett Andrews, an associate at Winstead,
represented SWBYP in the Bingham litigation, and attorney Tom Carse
represented Bingham.  Attorney Carse
deposed Bergthold on October 20, 2005 as part of the Bingham
litigation.  Attorney Andrews defended
the deposition.  Attorney Carse
represents Bergthold in the present litigation.








In September 2004Calmost a
year before Bergthold=s October 20, 2005 deposition in
the Bingham litigationCBergthold
began consulting with attorney Carse about filing his own suit against
SWBYP.  Bergthold, a senior account
representative (SAR) with SWBYP, met at least twice with attorney Carse prior
to his October 20, 2005 deposition.  Ten
to twelve other SARs with SWBYP also attended those meetings with attorney
Carse.  When Bergthold was asked at his
deposition in this litigation, AAnd the
purpose of that meeting was what?@
Attorney Carse objected on the ground of Aattorney-client
privilege.@ 
Bergthold thereafter refused to answer based on attorney-client
privilege.  Bergthold testified that he
had not retained attorney Carse but that Aall the
[SARs] for [SWBYP] in the Dallas/Fort Worth area, which there were like 10 or
12 of us, had met with Mr. Carse to discuss pay and issues with the company in
the SAR position.@ 
Bergthold was also asked on what date he had paid a retainer fee to
attorney Carse.  Attorney Carse objected
and instructed Bergthold not to answer based on the attorney-client privilege.

On the day that Bergthold was scheduled to be
deposed by attorney Carse in the Bingham litigation, the depositions
were running long.  Several people were
deposed that morning by attorney Carse, including Sue Sharley and Susan
Fuchs.  During Sharley=s
deposition, attorney Andrews stated on the record that Sharley Ais
represented by counsel here today@ and
that he represented her Aas a company representative,
which is the capacity she=s here in today.@  At lunchtime, prior to Bergthold=s
scheduled deposition, Bergthold, Sharley, Fuchs, Bingham, and attorney Carse
went to eat lunch together.  At the
lunch, they discussed how Sharley=s
deposition went, including, A[w]as it
difficult[,] [w]as it easy[,] . . . is there anything that [Bergthold] need[s]
to be aware of that would help [him] when [he goes] in.@  Sharley told the group, in front of attorney
Carse, that Amulti-year contracts were an
issue.@








Bergthold=s
deposition in the Bingham litigation ultimately was not taken the same
date as Sharley=s but was rescheduled for
October 20, 2005.  During the deposition,
Bergthold produced confidential SWBYP documents called multi-year
contracts.  Bergthold testified that he
brought the documents because Bingham had asked him about multi-year contracts,
and he Abrought
them in case it came up@ during his deposition.  He further testified that he did not seek,
and no one at SWBYP gave him, permission to take the documents to his
deposition.  Bergthold conceded at his
deposition in this litigation that attorney Andrews did not know of the
existence of the multi-year contracts before Bergthold produced them.  During breaks in his deposition in the Bingham
litigation, Bergthold visited with attorney Carse, although he denied that they
discussed the Bingham case.  At
the conclusion of Bergthold=s
deposition, attorney Andrews mentioned that Bergthold might be in some trouble
for producing the multi-year contracts. 
Bergthold got in the elevator with attorney Carse and asked him what
attorney Andrews had meant by that comment. 
Attorney Carse told Bergthold, A[I]f
there=s any
adverse consequences that came from my [Bergthold=s]
deposition in terms of Bell=s [SWBYP=s] doing
anything punitive, that I should notify him.@








Seven days after his deposition, BergtholdCwith
Carse as his attorneyCfiled this suit against SWBYP
for defamation and tortious interference with his union contract.  The defamation allegedly occurred in
September 2004, before Bergthold=s
October 20, 2005 deposition in the Bingham litigation.  A month later, SWBYP terminated Bergthold for
producing the confidential documents at his deposition in violation of SWBYP
company policy.

Bergthold added Winstead as a defendant in his
suit against SWBYP, alleging that attorney Andrews=s
failure to advise Bergthold not to produce the documents resulted in Bergthold=s
termination.  Specifically, Bergthold
asserted causes of action for legal malpractice and ordinary negligence, alleging
that attorney Andrews negligently failed to advise Bergthold not to produce the
confidential documents or object to their production and, alternatively, that
attorney Andrews negligently failed to inform Bergthold that he was not
Bergthold=s attorney.[3]  Bergthold later nonsuited SWBYP, leaving
Winstead as the sole defendant.








In a deposition Bergthold gave as part of this
litigation in July 2006Cbefore he joined Winstead as a
defendantChe testified that when he gave
his deposition in the Bingham litigation, AJared
Andrews was . . . repping -- representing the company.@  And in an April 2007 depositionCafter he
sued WinsteadCBergthold testified that he
received an email informing him that attorney Andrews was representing SWBYP
against Bingham=s claims.  But in that same deposition, Bergthold also
said that attorney Andrews called him two or three times before he gave his
deposition in the Bingham litigation and told him that Ahe was
representing the company and its employees.@  Later in the same deposition, Bergthold
testified that AMr. Andrews indicated that he
was representing us as employees, because Southwestern Bell was, in fact,
providing us to Mr. Carse to be deposed and, as such, we were also his client.@  Bergthold further testified that he asked
attorney Andrews whether he should take anything to his deposition and that
Andrews told him Athat if [he] had to have []
document[s] to answer a question, to bring [them].@








At attorney Andrews=s
deposition in this litigation, he testified that he was present during
Bergthold=s April 2007 deposition and
heard Bergthold=s testimony about their phone
conferences.  When asked whether
Bergthold left anything out of his description of the conferences, attorney
Andrews said that when he first contacted Bergthold, he told Bergthold Athat I
represent Southwestern Bell Yellow Pages and the employee being sued, Steve
Brown.@  He also testified that when Bergthold asked
him if he should take anything to the Bingham deposition, attorney
Andrews told him, Ano, we generally don=t advise
witnesses to bring anything unless . . . we think you=re going
to need it . . . and in this case, I don=t think
we anticipate anything like that.@

Winstead eventually filed a motion for summary
judgment on Bergthold=s legal malpractice and
negligence claims, asserting that it had no attorney-client relationship with
Bergthold and thus owed him no duty as a matter of law.[4]  The trial court granted the motion, and
Bergthold filed this appeal.

                             III.  SUMMARY JUDGMENT WAS PROPER

                  A.  No-evidence or Traditional Summary Judgment








Before turning to the merits of the case, we must
first determine whether Winstead filed, and the trial court granted, a
no-evidence motion for summary judgment, a traditional motion for summary
judgment, or a hybrid motion with regard to Bergthold=s legal
malpractice and negligence claims.  In
the first paragraph of its motion, Winstead stated that it filed the motion Apursuant
to Texas Rules of Civil Procedure 166a(b) and (i).@  The Aargument
and authorities@ section of the motion begins
with two paragraphs describing both the traditional and the no-evidence summary
judgment standards.  But the words Ano
evidence@ appear
nowhere in the section of the motion discussing Bergthold=s legal
malpractice claim, and, with respect to this claim, the motion fails to
identify Athe essential elements of a
claim or defense@ for which there is no evidence
as required by rule 166a(i).  Tex. R.
Civ. P. 166a(i) & cmt.; Mott v. Red=s Safe
& Lock Servs., Inc., 249 S.W.3d 90, 98 (Tex. App.CHouston
[1st Dist.] 2007, no pet.) (holding that a motion that fails to state specific
elements is fundamentally defective and insufficient to support summary
judgment as a matter of law).  Instead,
Winstead analyzed at considerable length the summary judgment evidence attached
to its own motion and argued that the evidence conclusively negated elements of
Bergthold=s claim, such as an
attorney-client relationship and duty. By contrast, in the sections of its
motion challenging Bergthold=s
intentional infliction of emotional distress and tortious interference claims,
Winstead specifically identified elements of the claims for which Bergthold
could present no evidence.








The trial court=s order
granting summary judgment does not specify whether it is a no-evidence or
traditional summary judgment.  On appeal,
Bergthold=s first issue is that the trial
court erred by granting Winstead a traditional summary judgment on his legal
malpractice claim, and his second issue is that the trial court erred by
granting Winstead a no-evidence summary judgment on his legal malpractice
claim.  In response to Bergthold=s second
issue, Winstead argues that the trial court did not err by granting a
no-evidence summary judgment; unlike its trial court motion, Winstead=s
appellate brief specifically identifies elements of Bergthold=s claim
for which there is no evidence.

Based on the record before us, we hold that
Winstead=s
summary judgment motion on Bergthold=s legal
malpractice claim was not a no-evidence motion because it failed to identify
the essential elements of the claim for which there is no evidence as required
by rule 166a(i).  See Tex. R. Civ.
P. 166a(i) & cmt.; Mott, 249 S.W.3d at 98. 
Therefore, we will analyze the summary judgment on Bergthold=s legal
malpractice claims under the traditional summary judgment standard of
review.  Because Winstead did not file a
no-evidence motion on the legal malpractice claim, the trial court could not
grant a no-evidence summary judgment on that claim; thus, we overrule Bergthold=s second
issue as moot.

               B.  Traditional Summary Judgment Standard of
Review








In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979).  The burden of proof is on
the movant, and all doubts about the existence of a genuine issue of material
fact are resolved against the movant.  Sw.
Elec. Power Co., 73 S.W.3d at 215.

When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s
favor.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 
Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  We will affirm a summary judgment only if the
record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of action or defense as
a matter of law.  Clear Creek Basin,
589 S.W.2d at 678.

                            C.  Attorney-Client Relationship Law








To recover on a claim of legal malpractice, a
plaintiff must prove (1) the attorney owed the plaintiff a duty; (2) the
attorney breached that duty; (3) the breach proximately caused the plaintiff=s
injuries; and (4) damages occurred.  Peeler
v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex. 1995); Stancu v. Stalcup,
127 S.W.3d 429, 433 (Tex. App.CDallas
2004, no pet.).  An attorney owes a duty
of care only to his or her client, not to third parties who may have been
damaged by the attorney=s negligent representation of
the client.  Barcelo v. Elliott,
923 S.W.2d 575, 578 (Tex. 1996) (preserving a bright-line privity rule denying
a cause of action to all estate beneficiaries whom the attorney did not
represent).  Under Texas law, attorneys
are not ordinarily liable for damages to a nonclient because privity of
contract is absent.  Am. Centennial
Ins. Co. v. Canal Ins. Co., 843 S.W.2d 480, 484 (Tex. 1992).  When a defendant moves for a summary judgment
because no attorney-client relationship exists, the defendant takes on the
burden of proving the nonexistence of the relationship as a matter of law.  Stancu, 127 S.W.3d at 433; Yaklin
v. Glusing, Sharpe & Krueger, 875 S.W.2d 380, 383 (Tex. App.CCorpus
Christi 1994, no writ).








The attorney-client relationship may be expressly
created through a contract, or it may be implied from the actions of the
parties.  Bright v. Addison, 171
S.W.3d 588, 596 (Tex. App.CDallas
2005, pet. denied);  Honeycutt v.
Billingsley, 992 S.W.2d 570, 581 (Tex. App.CHouston
[1st Dist.] 1999, pet. denied).  To
establish an attorney‑client relationship, the parties must explicitly or
by their conduct manifest an intention to create it.  Roberts v. Healey, 991 S.W.2d 873, 880
(Tex. App.CHouston [14th Dist.] 1999, pet.
denied) (citing Vinson & Elkins v. Moran, 946 S.W.2d 381, 405 (Tex.
App.CHouston
[14th Dist.] 1997, writ dism=d by
agr.)).  Whether there was a meeting of
minds between the parties to create an attorney-client relationship is
determined under an objective standard examining what the parties said and did,
not by the parties= subjective states of mind.  Bright, 171 S.W.3d at 596; Roberts,
991 S.W.2d at 880; Vinson & Elkins, 946 S.W.2d at 405.








Thus, an attorney‑client relationship may
be implied from the conduct of the two parties. 
Kotzur v. Kelly, 791 S.W.2d 254, 257B58 (Tex.
App.CCorpus
Christi 1990, no writ); Parker v. Carnahan, 772 S.W.2d 151, 157 (Tex.
App.CTexarkana
1989, writ denied); see also Lemaire v. Davis, 79 S.W.3d 592, 600 (Tex.
App.CAmarillo
2002, pet. denied) (explaining that an attorney-client relationship may be implied
Afrom the
conduct of the parties@); Scientific Leasing, Inc.
v. Windle, No. 05-92-00469-CV, 1993 WL 25336, at *5 (Tex. App.CDallas
Feb. 4, 1993, no writ) (not designated for publication) (ABoth parties
must manifest an intention to create an attorney-client relationship by their
conduct.@).  Conversely, an attorney-client relationship
cannot be implied based simply on the conduct of an attorney; the Aclient@ must
also engage in conduct evidencing the client=s
acceptance of the attorney-client relationship. 
See Collin County v. Johnson, No. 05-95-00281-CV, 1996 WL 223590,
at *5B6 (Tex.
App.CDallas
Apr. 30, 1996, no writ) (not designated for publication) (refusing to imply
attorney-client relationship because conduct of plaintiffCthe
alleged clientCAindicates
that it was looking to American States Insurance rather than to [attorney]
Johnson to protect its subrogation interest@).

Even in the absence of an attorney‑client
relationship, an attorney may be liable for negligently failing to advise a
party that he is not representing the party. 
Burnap v. Linnartz, 914 S.W.2d 142, 148 (Tex. App.CSan
Antonio 1995, writ denied); Kotzur, 791 S.W.2d at 258; Parker,
772 S.W.2d at 157.  Generally, such
negligence cannot be established in the absence of evidence that the attorney
knew that the party had assumed that he was representing the party in a
matter.  Burnap, 914 S.W.2d at 148B49
(citing Dillard v. Broyles, 633 S.W.2d 636, 643 (Tex. App.CCorpus
Christi 1982, writ ref=d n.r.e.), cert. denied,
463 U.S. 1208 (1983)).  If circumstances
lead a party to believe that it is represented by an attorney, however, the
attorney may be held negligent for failing to advise that party of the attorney=s non‑representation.  Id. at 149; Parker, 772 S.W.2d
at 157; Rice v. Forestier, 415 S.W.2d 711, 713 (Tex. Civ. App.CSan
Antonio 1967, writ ref=d n.r.e.).  The question is whether the attorney was
aware or should have been aware that his conduct would have led a reasonable
person to believe that the attorney was representing that person.  Burnap, 914 S.W.2d at 149; Parker,
772 S.W.2d at 157.[5]








                             D.  No Attorney-Client Relationship

On appeal, Bergthold does not argue that he
entered into an express attorney-client relationship with attorney Andrews and
Winstead.  We therefore turn to the
summary judgment evidence of what the parties said and did to determine whether
Winstead conclusively negated the existence of an implied attorney-client
relationship.  See Bright, 171
S.W.3d at 596; Roberts, 991 S.W.2d at 880; Vinson & Elkins,
946 S.W.2d at 405.








To recap the summary judgment evidence, according
to Bergthold, attorney Andrews told Bergthold that Winstead represented both
SWBYP and its employees, including Bergthold. 
Attorney Andrews called Bergthold two or three times before Bergthold=s
deposition in the Bingham litigation.  Bergthold and attorney Andrews both testified
that Bergthold asked attorney Andrews whether he should take anything to his
deposition.  According to Bergthold,
attorney Andrews Asuggested or indicated that if I
had to have a document to answer a question, to bring it.  He didn=t say
which documents or how.@ 
This objective evidence of what the parties said and did is some
evidence of attorney Andrews=s
intention to create an attorney-client relationship, but there must also be
some objective evidence of Bergthold=s
intention to create an attorney-client relationship; that is, there must be
some evidence of a mutual understanding between the parties that attorney
Andrews was acting as Bergthold=s
counsel.  See Bright, 171 S.W.3d
at 596; Roberts, 991 S.W.2d at 880; Vinson & Elkins, 946 S.W.2d
at 405.








Bergthold=s
conductCconclusively
established in the summary judgment record through Bergthold=s own
testimonyCdefeats as a matter of law any
implied attorney-client relationship between himself and attorney Andrews
during Bergthold=s deposition in the Bingham
litigation.  Bergthold contacted and met
several times with attorney Carse beginning more than a year before his
deposition in the Bingham litigation. 
Bergthold refused to disclose the purpose of these meetings, or the date
on which Bergthold paid attorney Carse a retainer fee, based on attorney-client
privilegeCan attorney-client relationship
between Bergthold and attorney Carse that existed prior to October 20,
2005.  Later, Bergthold revealed that the
meetings were to Adiscuss those complaints
[against SWBYP] and . . . what remedies we may or may not have or what we could
or couldn=t do about those.@  On the date of his scheduled deposition in
the Bingham litigation and prior to his deposition, Bergthold went to
lunch with attorney Carse and Bingham; and Sharley discussed her deposition in
front of attorney Carse and fielded questions from Bergthold about anything that
would help him in his deposition. 
Additionally, Sharley informed Bergthold in front of attorney Carse that
multi-year contracts were an issue. 
Seven days after Bergthold=s
deposition in the Bingham litigation, attorney Carse filed suit on
Bergthold=s behalf against SWBYP,
asserting a cause of action for defamation that allegedly occurred on a date
prior to Bergthold=s deposition in the Bingham
litigation.

The summary judgment evidence establishes that
Bergthold and attorney Andrews spoke three times via telephone prior to
Bergthold=s deposition. Attorney Andrews
called Bergthold each time they spoke; Bergthold never called attorney
Andrews.  Bergthold testified that he did
not tell attorney Andrews that he was bringing the multi-year contracts to his
deposition and did not show the contracts to attorney Andrews before his
deposition.  Bergthold admitted that
attorney Andrews did not know of the existence of the multi-year contracts
before the deposition.








In the trial court and on appeal, the parties
argue over the significance of attorney Andrews=s statementsCmade at
Sharley=s
deposition in the Bingham litigationCthat he
represented Sharley, but any attorney-client relationship attorney Andrews may
or may not have had with Sharley has no bearing on whether Bergthold=s
conduct manifested an implied attorney client relationship between himself and
attorney Andrews.  In short, Winstead=s
summary judgment evidence concerning Bergthold=s
conduct conclusively establishes that Bergthold did not engage in conduct
manifesting the existence of an implied attorney-client relationship between
himself and attorney Andrews.








Bergthold=s
conduct as reflected in the summary judgment evidence, if anything, manifested
the existence of an implied attorney-client relationship between himself and
attorney Carse on October 20, 2005 during his deposition in the Bingham
litigation.  See, e.g., Brown v.
McCleskey, Harriger, Brazil and Graf, L.L.P., No. 07-99-00027-CV, 1999 WL
795478, at *6B7 (Tex. App.CAmarillo
Oct. 6, 1999, pet. denied) (not designated for publication) (noting factors
external to the transaction at issueCincluding
representation on other mattersCthat
could support an inference that attorney knew client thought attorney was
representing him).  Bergthold went to
lunch with attorney Carse, Bingham, Fuchs, and Sharley; sought advice
concerning his deposition; and was told that multi-year contracts were at
issue.  Attorney Carse rescheduled his
deposition of Bergthold, and BergtholdCwithout
consulting the attorney he now claims represented him specifically on whether
he should bring multi-year contractsCbrought
them with him to his deposition. 
Additionally, Bergthold visited with attorney Carse during breaks in his
deposition, Berthold went to attorney Carse for advice and clarification of the
meaning of attorney Andrews=s
comment at the end of his deposition, and attorney Carse responded that he
would protect Bergthold=s interests if SWBYP engaged in
any punitive conduct.

Thus, even viewing all of the summary judgment
evidence in the light most favorable to Bergthold, at most that summary
judgment evidence establishes that possibly attorney Andrews=s conduct
might have manifested an intent that he represent Bergthold at his October 20,
2005 deposition in the Bingham litigation.  But an attorney-client relationship cannot be
implied based on the conduct of only one party. 
See Kotzur, 791 S.W.2d at 257B58; Parker,
772 S.W.2d at 157.  The summary judgment
evidence concerning Bergthold=s
conduct conclusively establishes that Bergthold did not engage in any conduct
manifesting an implied attorney-client relationship with attorney Andrews and
instead indicates that Bergthold was not looking to attorney Andrews, but to
attorney Carse, to protect his interests during his deposition in the Bingham
litigation.








      E.
No Duty to Inform of Non-Existence of Attorney-Client Relationship








Likewise, the same evidence detailed above
conclusively negates the existence of any duty by attorney Andrews to inform
Bergthold that he did not represent Bergthold. 
Such a duty may arise when circumstances lead a reasonable person to
believe they are represented by the attorney. 
Burnap, 914 S.W.2d at 149. 
In determining whether such a duty exists, we examine the conduct of the
parties at the time of the assumed representationChere,
leading up to and during Bergthold=s
deposition in the Bingham litigation. 
Bergthold=s conduct, as reflected in the
summary judgment evidence, is inconsistent with an assumption that attorney
Andrews represented him at his October 20, 2005 deposition.  See Dillard, 633 S.W.2d at 643
(declining to impose duty on attorney to affirmatively deny that he represented
appellants when there was no evidence that appellants assumed attorney
represented them).  Bergthold never
initiated contact with attorney Andrews, Bergthold did not tell attorney
Andrews that he was bringing the multi-year contracts to his deposition or even
inform attorney Andrews of the existence of such contracts, Bergthold went to
lunch with attorney CarseCthe attorney taking his
depositionCon the day of his deposition,
and Bergthold had a conversation with Sharley, in front of attorney Carse,
about what to expect in his deposition. 
Bergthold=s conduct demonstrates that he
affirmatively rejected any representation by attorney Andrews during his
deposition.  And Bergthold could not have
been represented during his deposition by both attorney Carse, the attorney
taking his deposition, and attorney Andrews, the attorney defending his
deposition.  Under these narrow facts,
because the summary judgment evidence, even viewed in the light most favorable
to Bergthold, conclusively establishes that Bergthold rejected representation
by attorney Andrews at his October 20, 2005 deposition in the Bingham
litigation and instead looked to attorney Carse for representation, attorney
Andrews possessed no duty to tell Bergthold that he did not represent Bergthold
at that deposition.

Consequently, because the summary judgment
evidence conclusively establishes that no attorney-client relationship existed
between attorney Andrews and Bergthold and that attorney Andrews had no duty to
inform Bergthold that he did not represent him, we hold that the trial court
did not err by granting summary judgment on this basis.  Accordingly, we overrule Bergthold=s first
issue.








                                          IV.  CONCLUSION

Having overruled both of Bergthold=s
issues, we affirm the trial court=s
summary judgment for Winstead.

 

 

SUE
WALKER

JUSTICE

 

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

 

GARDNER, J. filed a
concurring and dissenting opinion.

 

DELIVERED: January 29,
2009

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.  2-07-325-CV

 

JERRY
BERGTHOLD                                                             APPELLANT

 

                                                   V.

 

WINSTEAD
SECHREST &                                                         APPELLEE

MINICK, P.C.

                                              ------------

 

           FROM THE 236TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

            CONCURRING AND
DISSENTING MEMORANDUM OPINION[1]

 

I agree with the majority that Winstead=s
summary judgment motion on Bergthold=s legal
malpractice claim was not a no-evidence motion and must be reviewed under the
traditional standard of review.  I agree
that the summary judgment evidence conclusively established that neither an
express nor an implied attorney-client relationship existed between Winstead
and Bergthold.  However, I must disagree
that Winstead conclusively established on this record that attorney Andrews
owed no duty to affirmatively advise Bergthold that he did not represent him in
the deposition.








I believe we must indulge the reasonable
inference in favor of Bergthold from the evidence of what the parties said and
did, particularly Bergthold=s
testimony that attorney Andrews told him he was representing him in the matter,
that Andrews thereby knew or at least should have known that his conduct would
lead a reasonable person to assume Andrews (and hence, Winstead) was, indeed,
representing Bergthold.[2]








Dillards v. Broyles[3] is
cited by the majority for the proposition that no duty to advise arose when
there was no evidence that appellants assumed that the attorney represented
them.  Dillards involved an instructed
verdict, which was proper where there was no evidence to raise an issue of fact
for the jury.  But we are reviewing a
traditional summary judgment requiring that evidence negate an element of a
claim as a matter of law, not a no-evidence motion.  And again, unlike Dillards, there is
affirmative evidence here that attorney Andrews told Bergthold he was
representing him.[4]  We cannot simply disregard that evidence.

As the majority recognizes, when reviewing a
traditional summary judgment, the issue is whether the movant established its
right to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d
211, 215 (Tex. 2002); City of the Colony v. N. Tex. Mun. Water Dist.,
No. 02-07-00128-CV, 2008 WL 5056886, at *8 (Tex. App.CFort
Worth, Nov. 26, 2008, no pet. h.).  The
burden of proof was on Winstead, and we must indulge every reasonable inference
and resolve all doubts about the existence of a genuine issue of material fact
in favor of Bergthold, the nonmovant.  Sw.
Elec. Power Co., 73 S.W.3d at 215. 
We take as true all evidence favorable to Bergthold.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  Reviewed
under the proper standard, I do not believe Winstead met its burden with
respect to Bergthold=s negligence claim.

 

ANNE
GARDNER

JUSTICE

 

 

DELIVERED: January 29,
2009











[1]See Tex. R. App. P. 47.4.





[2]See Bingham v. Sw. Bell
Yellow Pages, Inc., No. 02‑06‑00229‑CV, 2008 WL 163551,
at *1 (Tex. App.CFort Worth Jan. 17, 2008,
no pet. h.) (mem. op. on reh=g).  That
litigation is referred to as the Bingham litigation.





[3]Bergthold also asserted
causes of action for intentional infliction of emotional distressCwhich he had abandoned by
the time he filed his eighth amended original petitionCand for tortious
interference with his union contract. 
The trial court granted summary judgment on his tortious interference
claim,  and Bergthold does not argue on
appeal that the trial court erred by so doing. 
Instead, his brief on appeal challenges only the propriety of summary
judgment granted on his legal malpractice and negligence claims.





[4]Winstead also moved for
no-evidence and traditional summary judgment on Bergthold=s claims for tortious
interference and intentional infliction of emotional distress, but those
motions are not at issue in this appeal because Bergthold abandoned his
intentional infliction of emotional distress claim before summary judgment and
does not challenge the trial court=s summary judgment on his tortious interference
claim.





[5]Bergthold cites
disciplinary rule of professional conduct 1.12 as a standard of liability.  Rule 1.12 provides that a lawyer representing
an organization shallCwhen dealing with the
organization=s employeesCexplain the identity of
the client when it is apparent that the organization=s interests are adverse
to those of its constituents.  Tex.
Disciplinary R. Prof=l Conduct 1.12(e).  But the preamble to the State Bar Rules
states that the rules do not define standards of civil liability, that
violation of the rules does not give rise to a private cause of action nor
create any presumption that a legal duty to a client has been breached, and
that nothing in the rules should be deemed to augment any substantive legal
duty of lawyers or the extra‑disciplinary consequences of violating such
a duty.  Id. preamble & 15.  The disciplinary rules set forth the proper
conduct of lawyers solely for the purpose of discipline within the profession.  1 J. Hadley Edgar, Jr. & James B. Sales, Texas
Torts & Remedies ' 12.02[1][a][ii][A]
(2000).  A private cause of action does
not exist for violation of the disciplinary rules.  Id.; Jones v. Blume, 196 S.W.3d
440, 449 (Tex. App.CDallas 2006, pet.
denied).  Thus, our analysis will focus
on the common law standards of liability articulated in the foregoing
paragraphs.





[1]See Tex. R. App. P. 47.4.





[2]See Burnap v. Linnartz, 914 S.W.2d 142, 149
(Tex. App.CSan Antonio 1995, writ
denied) (holding circumstances may lead a party to believe they are represented
by an attorney); Parker v. Carnahan, 772 S.W.2d 151, 157 (Tex. App.CTexarkana 1989, writ
denied) (holding fact issue on duty raised by evidence attorneys were aware or
should have been aware their conduct would lead a reasonable person to believe
she was being represented by them).





[3]633 S.W.2d 636, 643 (Tex. Civ. App.CCorpus Christi, writ ref=d n.r.e.), cert.
denied, 463 U.S. 1208 (1983).





[4]Likewise, there was no evidence offered in
Brown v. McCleskey, No. 07-99-00027-CV, 1999 WL 795478 (Tex. App.CAmarillo October 6,1999,
pet. denied) (not designated for publication), unlike in this case, that the
attorney told the putative client that he represented her.