UTICA INSURANCE COMPANY,
Appellant

v.

PRUITT & COWDEN, Sam Pruitt,
and Jax Cowden, Appellees.

No. 01-94-00457-CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 15, 1995.

Rehearing Overruled Aug. 3, 1995.

Larry S. Lee, Houston, for appellant.

Eugene J. Pitman, Ben A. Baring, Jr., and Rosa S. Silbert, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and MIRABAL and O'CONNOR, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Appellant, Utica Insurance Company, appeals from the trial court's summary judgment in favor of appellees, Pruitt & Cowden, Sam Pruitt, and Jax Cowden, on Utica's suit for legal malpractice and contribution. We affirm in part and reverse and remand in part.

### Background

Utica was the liability insurer of American Mortgage Company. American Mortgage Company ("AMC") was the servicing agent for mortgages held by Jackson County Federal Bank, which in turn was the holder and owner of a mortgage note secured by a deed of trust executed by Charles and Shelley Haden in 1983. In 1988, the Hadens asked Jackson County for a modification of the loan agreement. Jackson County agreed to the modification, and AMC hired the law firm of Pruitt & Cowden to prepare the "Loan Modification Agreement" and the "Truth-in-Lending Disclosure Statement."

Pruitt & Cowden made an error drafting the Loan Modification Agreement and the Truth-in-Lending Disclosure Statement. The error was a discrepancy concerning the modified rate of interest. Under the "Loan Modification Agreement," the index on the adjustable interest rate was defined as "the monthly weighted average cost of savings, borrowings and advances of members of the Federal Home Loan Bank of San Francisco." The "Truth-in-Lending Disclosure Form" defined the index as "the average cost of funds to FSLIC insured savings and loan associations, all districts, as computed by the Federal Home Loan Bank Board."

The Hadens defaulted on their loan in September 1989, before the modified interest rate was to take effect. On August 13, 1990, Meagan Baumer, the trustee under the deed of trust, sent the Hadens a notice of foreclosure sale. On August 31, 1990, the Hadens sued Jackson County, Baumer, and AMC. The Hadens alleged that they defaulted because the Loan Modification documents contained conflicting interest rates. The Hadens sought and received a temporary injunction prohibiting the foreclosure. In addition to an injunction, the Hadens sought declaratory relief and damages of $1.7 million, based on breach of contract, breach of fiduciary duty, defamation, and violations of the Deceptive Trade Practices Act and the Texas Debt collection statute, all allegedly caused by the discrepancy in the interest rate applicable to the loan modification. Utica, as AMC's insurer, defended AMC in the *Haden* litigation, and settled with the Hadens for $125,000 in the spring of 1993 prior to trial.

Meanwhile, on November 15, 1991, before the *Haden* suit was settled, Jackson County and AMC filed suit against Pruitt & Cowden, alleging damages for legal malpractice, and indemnity and/or contribution for any damages arising out of the *Haden* suit. The trial court consolidated the two cases for discovery purposes.

Pursuant to TEX.R.CIV.P. 165a(1), the trial court dismissed the suit against Pruitt & Cowden for want of prosecution on March 16, 1993. The suit was reinstated only as to Jackson County on July 26, 1993. On October 19, 1993, Utica, as subrogee of AMC,[1] filed its Original Plea in Intervention, pursuant to TEX.R.CIV.P. 60. Utica alleged legal malpractice and contribution and indemnity pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 33.016(a) (Vernon Supp.1993).

Appellees filed a motion for summary judgment, alleging that Utica's malpractice claim was barred by the statute of limitations, that Utica had failed to show proximate cause, and that appellees had no liability for contribution or indemnity. Utica's response to the motion for summary judgment abandoned any claim for indemnity and asserted, for the first time, that appellees' statute of limitations defense was subject to the "discovery rule." Appellees filed a reply to Utica's response objecting to Utica's claim that the discovery rule applied to the statute of limitations issue. The trial court granted summary judgment on January 5, 1994, and Utica appeals.

### Standard of Review

Under TEX.R.CIV.P. 166a(c), a summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and we resolve all doubts about the existence of a genuine issue of fact against the movant. *Montgomery v. Kennedy, 669* S.W.2d 309, 310–11 (Tex.1984).

Once the movant has established a right to a summary judgment, the burden shifts to the non-movant. The non-movant then must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek*

*Basin Auth.,* 589 S.W.2d at 678; *Brown v. Cain Chemical Inc.*, 837 S.W.2d 239, 242 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

Summary judgment is proper for a defendant if his summary judgment proof establishes, as a matter of law, that there exists no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any of the theories in its petition. *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

In reviewing the granting of a motion for summary judgment, we take all evidence favorable to the non-movant as true. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986); *Goldberg,* 775 S.W.2d at 752. Every reasonable inference will be indulged in favor of the non-movant, and any reasonable doubt will be resolved in his favor. *Goldberg,* 775 S.W.2d at 752. When, as in this case, the defendant moves for summary judgment on its own affirmative defense, the movant has the burden of proving each element of its defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d at 310–11.

In the case below, the trial court rendered summary judgment on general grounds. Thus, we must consider whether any of the theories asserted by the movant (appellees) are meritorious. *State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993). Appellees' motion for summary judgment relied on the statute of limitations, lack of proximate cause and no cause of action for contribution.

### 1. Statute of Limitations

Because a subrogation action is derivative, a defendant in such a case may

---

1. Utica argues that because AMC had a legal malpractice cause of action against appellees, Utica, as AMC's insurer, can employ the doctrine of equitable subrogation to continue the prosecution of the insured's legal malpractice action.

*See American Centennial Ins. v. Canal Ins.,* 843 S.W.2d 480, 482 (Tex.1992) (endorsing doctrine of equitable subrogation). Appellees do not argue that equitable subrogation would be inappropriate in this case.

assert any defense he would have had in a suit brought by the subrogor. *Guillot v. Hix*, 838 S.W.2d 230, 232 (Tex.1992). It follows that subrogation actions are subject to the same statute of limitations which would apply had the action been brought by the subrogor. *Id.* at 233. Actions for legal malpractice are subject to a two-year statute of limitations. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1987); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988).

 The Loan Modification Agreement and Truth-in-Lending Statement were executed on August 24, 1988. Certain tolling agreements were executed which tolled the limitations period from August 23, 1990, to November 15, 1991. AMC's original suit was filed on November 15, 1991, and dismissed for want of prosecution on March 18, 1993. Utica's intervention was filed on October 19, 1993. When a case is dismissed for want of prosecution, it is as if the case had never been filed at all for limitations purposes. *Cronen v. City of Pasadena*, 835 S.W.2d 206, 210 (Tex.App.—Houston [1st Dist.] 1992, no writ).

 Relying on *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex.1991), and *Gulf Coast Investment Corp. v. Brown*, 821 S.W.2d 159, 160 (Tex.1991), Utica argues that the statute of limitations against attorneys is tolled until final resolution of the underlying claim.

In *Hughes*, an attorney committed malpractice while providing legal services in the prosecution of a claim that resulted in litigation, and the clients filed a malpractice action against their attorney. The supreme court held that in such a case the statute of limitations is tolled "until all appeals on the underlying claim are exhausted." *Hughes*, 821 S.W.2d at 157. Otherwise, the court concluded, legal injury and discovery rules would force the client into adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case. *Id.* at 156. In other words, in the underlying litigation, the client would have to argue that the attorney's error was not harmful, or at least not fatal, while in the malpractice action the client would have to argue that, but for the attorney's negligence, the client's suit would have been successful.

Similarly, in *Gulf Coast Investment Corporation*, the client hired a law firm to conduct a non-judicial foreclosure sale of real property. Due to the firm's malpractice, the owners of the property filed a wrongful foreclosure action against the client, who ended up settling with the owners. When the client sued the firm for malpractice, the supreme court applied the *Hughes* rule and held that the statute of limitations was tolled until the wrongful foreclosure action was finally resolved. *Gulf Coast Investment Corp.*, 821 S.W.2d at 160.

Furthermore, in *American Centennial Ins. v. Canal Ins.*, 843 S.W.2d 480 (Tex.1992), the supreme court reversed this Court's holding that a subrogee's action for malpractice accrued at the time of the alleged malpractice. Applying *Hughes*, the supreme court held that limitations was tolled until the underlying claim was resolved. *Id.* at 483–84. Tolling the statute of limitations until a final resolution of the underlying suit allows an accurate evaluation of the secondary suit. This fosters judicial economy, because if there are no damages in the underlying suit, the secondary suit is not necessary.

Appellees do not challenge the rationale of *Hughes* and *Gulf Coast Investment Corporation*. Instead, they argue that they are inapplicable because there was no "underlying claim" as that term was used in *Hughes* and *Gulf Coast Investment Corporation*. Appellees argue that the *Haden* suit was not based on the error in the Truth-in-Lending disclosure form, but rather was based on breach of contract, breach of fiduciary duty, defamation, and violations of the Deceptive Trade Practices Act and the Texas Debt collection statute.

We disagree. As part of their summary judgment evidence, appellees included the Hadens' trial pleadings, which asserted various claims, most of which allegedly arose out of the ambiguity in the loan documents. Furthermore, Utica's summary judgment evidence included a sworn affidavit from the Hadens' lead counsel, who stated that the primary emphasis of the Hadens' suit was the discrepancy between interest rate indices

contained in the loan documents drafted by appellees.

The drafting error, and the Hadens' reliance on it, raises a genuine issue of material fact insofar as the statute of limitations is concerned. We must, however, go one step further. In order for Utica to prevail in the instant suit, it must show that appellees' drafting error was the proximate cause of the damages it suffered in settling the *Haden* suit. In the *Haden* suit, however, Utica (through AMC) had an incentive to argue, and did argue, that the drafting error was inconsequential. This is precisely the dilemma that the *"Hughes* rule" was designed to avoid. Thus, we hold that the statute of limitations was tolled to the date of the settlement. Because the facts indicate the settlement was in the spring of 1993, Utica was well within the statute of limitations under *Hughes* when it filed suit on October 19, 1993.

### 2. Lack of Proximate Cause

■ The second ground upon which appellees moved for summary judgment was that appellees' drafting error did not proximately cause the *Haden* litigation. The issue is not whether the Hadens would have ultimately succeeded in their suit against Jackson and AMC; rather, the issue is whether the loan documents gave the Hadens an advantage that they would not otherwise have had, and if so, whether that advantage proximately caused AMC's damages. *Stonewall Surplus Lines Ins. Co. v. Drabek,* 835 S.W.2d 708, 712 (Tex.App.—Corpus Christi 1992, writ denied). The summary judgment evidence reveals that the error may well have given the Hadens an advantage that they would not otherwise have had.

As mentioned above, Utica's summary judgment evidence included the sworn affidavit of the Hadens' counsel. The affidavit stated that the main emphasis of the Hadens' lawsuit was based upon the variance of the interest rate indices contained in the loan documents. The affidavit also states that the variance was the main argument presented to the trial court that granted the injunction against the foreclosure sale. Further, the affidavit states that the injunction gave the

Hadens an advantage in the suit, and that, but for appellees' error, the Hadens' position would have been "weakened tremendously." Utica also presented the trial court with the sworn affidavit of AMC's counsel, who stated that "most trial courts in Harris County, Texas are going to enjoin foreclosures if the documentation of the lender is in error."

Therefore, even if we relied on *Stonewall* and held that the value of the underlying suit could have increased as a result of the drafting error, we must still determine whether, as a matter of law, the drafting error in the Truth-in-Lending form constituted a cause of action for which relief may be granted. If the drafting error does not rise to the level of liability, it could not, as a matter of law, have been the proximate cause of Utica's damages.

The purpose of the Truth-in-Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C.A. § 1601(a); *McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir.1978). Further, only adherence to a strict compliance standard will promote the standardization of terms which will permit consumers to readily make meaningful comparisons of available credit alternatives. *Smith v. Chapman,* 614 F.2d 968, 971 (5th Cir.1980).

■ The fact that the Truth-in-Lending disclosure indicated an interest rate different from the Modification Agreement constitutes the type of confusion the Act was meant to avoid. However, in order for liability to attach, the drafting error must be more than merely a clerical error. If it is shown "by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," liability will not attach. 15 U.S.C.A. § 1640(c); *McGowan,* 569 F.2d at 848 n. 3. Whether appellees enacted maintenance procedures reasonably adapted to avoid the type of error discussed in this case is a question of fact. Accordingly, the summary judgment could not properly have

been granted on the issue of proximate cause.

We sustain Utica's first and second points of error.

### 3. No Liability for Contribution

In its third point of error, Utica argues that the trial court erred in granting the motion for summary judgment based on the contribution claim "because there were many other theories of liability presented in the legal malpractice case other than a claim for contribution and indemnity." Despite the above-quoted statement, the only other theory presented below was Utica's claim for legal malpractice.

Even if Utica did not waive its claim for contribution, summary judgment would have been proper on this cause of action. In *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19 (Tex.1987), the supreme court held that an agreed settlement does not provide a basis for subsequent contribution claims. *Id.* at 21. Under both the contribution statutes and the common law, a party seeking contribution must first obtain an adverse judgment. *Id.* Accordingly, we overrule Utica's third point of error.

We reverse and remand the judgment of the trial court on the statute of limitations and proximate cause issues. We affirm the summary judgment as to the claim for contribution.