Opinion issued November 14, 2002







 




In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-00890-CV

____________


THE VACEK GROUP, INC. F/K/A VACEK-CRAWFORD, INC., Appellant


V.


DOUGLAS C. CLARK AND BENCKENSTEIN, NORVELL & NATHAN,
L.L.P., Appellees






On Appeal from the 281st District Court

Harris County, Texas

Trial Court Cause No. 99-38376






O P I N I O N

 In this appeal of a legal-malpractice suit, we revisit--in light of the supreme
court's opinion in Murphy v. Campbell--whether the Hughes tolling rule applies to
malpractice claims arising out of transactional work performed by attorneys that
occurs before litigation commences. Murphy, 964 S.W.2d 265, 272 (Tex. 1997);
Hughes v. Mahaney & Higgins, 821 S.W.2d 154, 157 (Tex. 1991). We conclude that
Murphy dictates that the Hughes tolling rule does not apply in such situations.

 Appellant The Vacek Group, Inc. f/k/a Vacek-Crawford, Inc. sued appellees
Douglas C. Clark (Vacek's former lawyer) and Benckenstein, Norvell & Nathan,
L.L.P. (Vacek's former law firm). After a bench trial, the district court rendered a
take-nothing judgment. Vacek brings six issues on appeal, primarily challenging the
sufficiency of the evidence. We affirm.

Facts

 Vacek is a forensic engineering company. The original shareholders were Sam
Vacek, Donna Vacek, and Jim Crawford. After an altercation between Donna Vacek
and Crawford, the shareholders agreed to a "corporate divorce" in which Crawford
would resign as a director and sell his shares to Sam and Donna. Vacek hired Clark
and his law firm to carry out this corporate divorce.

 Clark drafted an April 15, 1997 agreement in principle, which was described
in the document as a "preliminary agreement." According to the Agreement,
Crawford was to transfer his shares of Vacek to Sam and Donna in exchange for
Vacek's funding Crawford's simplified employee pension plan. Clark did not include
language in the Agreement that released any potential claims by Crawford against
Vacek. The Agreement was signed by Sam, Donna, and Crawford.

 After disputes arose over compliance with the Agreement, Vacek sent Clark
the following July 25, 1997 letter:

 Based on recent events and the demand letter sent by the attorney for
Jim Crawford yesterday it is obvious we are headed for court. We have
now hired litigation counsel to respond to this letter and make similar
demands on our behalf. You have not done this as our supposed
corporate counsel.


 Since it appears that the April agreement you wrote for both sides is at
the center of this dispute, you should not have any more involvement in
this issue.


 Therefore, you are instructed not to release any information or have any
discussions regarding any business of our corporation to anyone. This
includes Jim Crawford and counsel for Jim Crawford.


 Should you wish to discuss this matter further you may contact our
attorney . . . .

Crawford later filed suit against Vacek, which Vacek settled for $24,000.

 On July 27, 1999, Vacek sued Clark and his law firm for negligence, breach of
fiduciary duty, breach of contract, and violation of the Deceptive Trade Practices-Consumer Protection Act. See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (Vernon
1987 & Supp. 2002). Clark and the law firm answered and pleaded the affirmative
defense of limitations. See Tex. R. Civ. P. 94. After a bench trial, the district court
rendered a take-nothing judgment and filed findings of fact and conclusions of law. 
In addition to holding against Vacek on the merits, the district court found that
Vacek's claims against Clark and his law firm accrued before July 27, 1997 and
concluded that those claims were barred by the statute of limitations. See generally
Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2002) (two-year
limitations period); Willis v. Maverick, 760 S.W.2d 642, 644 (Tex. 1988).

Discussion

 In issue one, Vacek challenges the factual sufficiency of the district court's
discovery-rule finding that Vacek's malpractice claims against Clark and his law firm
accrued before July 27, 1997. We review a trial court's findings of fact for factual
sufficiency under the same standard as a jury verdict. Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991). Because Clark and his law firm had the
burden at trial to prove limitations, we will set aside the findings if the supporting
evidence is so weak as to be clearly wrong and manifestly unjust. See Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).

 Vacek argues that the statute of limitations does not apply for two reasons. (1)



Tolling of limitations due to failure to disclose material fact

 First, Vacek claims the statute of limitations was tolled because Clark
performed work for Vacek after July 27, 1997, billed for that work, and failed to
disclose a material fact--that execution of the Agreement would not protect Vacek
from subsequent claims because the Agreement did not include a release. McClung
v. Johnson, 620 S.W.2d 644, 647 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e.)
(holding limitations tolled until termination of attorney-client relationship when
attorney fails to disclose material fact), disapproved on other grounds by Willis v.
Maverick, 760 S.W.2d 642, 645 n.2 (Tex. 1988). Vacek argues that Clark's post-July
27, 1997 work included the preparation of a July 28, 1997 letter in which Clark
identified himself as "the corporate attorney" and an August 22, 1997 letter regarding
moving Crawford's furniture from Vacek's office and Vacek funding Crawford's
pension plan.

 Even if we were to assume Clark and his law firm had a duty to include a
release in a "preliminary agreement," Vacek would still have had the burden of proof
at trial regarding Clark's and his law firm's alleged failure to disclose. On appeal,
Vacek does nothing more than make the conclusory statement that "Clark breached
his duty to disclose facts material to his representation of the Corporation (that
execution of the Agreement would not protect the Corporation from subsequent
claims)." Without further argument or any citation to the record, Vacek has presented
nothing for this Court to review. See Harris County Mun. Util. Dist. No. 48 v.
Mitchell, 915 S.W.2d 859, 866 (Tex. App.--Houston [1st Dist.] 1995, writ denied);
see also Tex. R. App. P. 38.1(h) (appellate brief must contain clear and concise
argument for contentions made, with appropriate citations to authorities and record).

Hughes tolling rule

 Second, Vacek claims the statute of limitations was tolled because of the
Hughes tolling rule. See Hughes, 821 S.W.2d at 157. In Hughes, the Texas Supreme
Court observed that "when an attorney commits malpractice while providing legal
services in the prosecution or defense of a claim which results in litigation, the legal
injury and discovery rules can force the client into adopting inherently inconsistent
litigation postures in the underlying case and in the malpractice case." Hughes, 821
S.W.2d at 156. The court held that such a position was untenable. Id. As a remedy,
the court announced the Hughes tolling rule, stating that the statute of limitations for
a malpractice claim against an attorney, committed in the prosecution or defense of
a claim that results in litigation, is tolled until all appeals on the underlying claim are
exhausted. Id. at 157. (2)

 The supreme court has restated the Hughes tolling rule on numerous occasions,
each time stating that the rule is invoked when the alleged malpractice is committed
by an attorney during the prosecution or defense of a claim that results in litigation. 
Underkofler v. Vanasek, 53 S.W.3d 343, 347 (Tex. 2001); Apex Towing Co. v. Tolin,
41 S.W.3d 118, 121 (Tex. 2001); Murphy, 964 S.W.2d at 272; Sanchez v. Hastings,
898 S.W.2d 287, 288 (Tex. 1995); Am. Centennial Ins. Co. v. Canal Ins. Co., 843
S.W.2d 480, 483-84 (Tex. 1992); Gulf Coast Inv. Corp. v. Brown, 821 S.W.2d 159,
160 (Tex. 1991); Aduddell v. Parkhill, 821 S.W.2d 158, 159 (Tex. 1991), overruled
on other grounds by Underkofler, 53 S.W.3d at 347. However, a 1991 supreme court
decision and a 1995 decision from this Court have raised an issue whether the Hughes
tolling rule applies only to legal-malpractice claims arising from litigation of an
underlying claim, or whether it applies to those legal-malpractice claims arising from
transactional work performed by an attorney as well. See Gulf Coast Inv. Corp., 821
S.W.2d at 160 (allowing application of Hughes tolling rule to attorney's alleged
malpractice in conducting nonjudicial foreclosure action of real property that resulted
in wrongful foreclosure action); see also Utica Ins. Co. v. Pruitt & Cowden, 902
S.W.2d 143, 147-48 (Tex. App.--Houston [1st Dist.]) (applying Hughes tolling rule
to allow suit against attorney for committing error in drafting loan modification
agreement), remanded for rendition of agreed judgm't and opinion withdrawn from
publication, No. 01-94-00457-CV (Tex. App.--Houston [1st Dist.] Aug. 3, 1995, no
writ) (not designated for publication). (3)

 In 1997, the supreme court addressed the issue of whether the Hughes tolling
rule applied to alleged accounting malpractice. Murphy, 964 S.W.2d at 272. The
court first determined that, even though the discovery rule applied, the cause of action
accrued no later than the date the plaintiffs received a deficiency notice from the
Internal Revenue Service in June 1987. Id. at 270-72. The plaintiffs filed their
malpractice action in June 1991, more than two years after receiving the deficiency
notice. Id. at 267. They argued that the Hughes tolling rule applied because they
filed suit in United States Tax Court in September 1987 to protest the IRS ruling, and
the suit was not resolved until November 1989. Id. at 267, 272. If the Hughes tolling
rule applied, then the malpractice action was timely filed within two years.

 The court stated that Hughes does not toll limitations whenever a litigant might
be forced to take inconsistent positions, because such a rule would create too broad
an exception to limitations. Id. at 272. The court emphasized that it "expressly
limited the rule in Hughes to attorney malpractice in the prosecution or defense of a
claim that results in litigation." Id. at 272. Although the court could have decided
Murphy on the narrow ground that the Hughes tolling rule does not apply to
accountants, it instead decided the case on the broader ground that the alleged
underlying malpractice must occur "in the prosecution or defense of a claim that
results in litigation." Id. at 272. (4) It follows from the logic of Murphy that alleged
attorney-malpractice claims based on transactional work will not be tolled under
Hughes.

 Some appellate courts have interpreted the Murphy decision as narrowing the
scope of the Hughes tolling rule to apply to only those cases in which the client
continues to be represented by the attorney who allegedly committed malpractice in
the underlying suit. Eiland v. Turpin, Smith, Dyer, Saxe & McDonald, 16 S.W.3d
461, 465-70 (Tex. App.--El Paso 2000), pet. granted, judgm't vacated w.r.m. per
curiam, 46 S.W.3d 872 (Tex. 2001); Apex Towing Co. v. Tolin, 997 S.W.2d 903, 905
(Tex. App.--Beaumont 1999), rev'd, 41 S.W.3d 118 (Tex. 2001); Nuñez v.
Caldarola, 2 S.W.3d 755, 758-59 (Tex. App.--Corpus Christi 1999), pet. granted,
judgm't vacated w.r.m. per curiam, 48 S.W.3d 174 (Tex. 2001). In response to this
misinterpretation of Murphy, the supreme court stated that continued representation
was not a requirement of Hughes. Apex Towing Co., 41 S.W.3d at 121-22.

 Additionally, in Apex Towing Co., the supreme court created further ambiguity
as to whether Hughes applies to alleged malpractice claims based on transactional
work. See id. at 122. The court instructed lower courts to desist from re-examining
whether the policy reasons behind Hughes apply in each legal-malpractice case
presented and to "simply apply the Hughes tolling rule to the category of legal-malpractice cases encompassed within its definition." Id. at 122. The court cited our
withdrawn opinion in Utica Insurance Co. as one of four cases in this category, as
well as our opinion in Farah v. Mafrige & Kormanik, P.C., the Fourth Court's
opinion in Burnap v. Linnartz, and the Fifth Court's opinion in Hoover v. Gregory. 
Id. at 122; Farah, 927 S.W.2d 663 (Tex. App.--Houston [1st Dist.] 1996, no writ);
Burnap, 914 S.W.2d 142 (Tex. App.--San Antonio 1995, writ denied); Hoover v.
Gregory, 835 S.W.2d 668 (Tex. App.--Dallas 1992, writ denied).

 In Burnap, the underlying claim arose from the drafting of a mutual release and
indemnity agreement. 914 S.W.2d at 146. The court of appeals held that when the
alleged malpractice is not connected with the prosecution or defense of a claim, the
rationale for the tolling provision of Hughes is inapplicable. Id. at 147. Burnap also
distinguished the supreme court's Gulf Coast opinion, based on the fact that the
underlying claim in Gulf Coast arose from the prosecution of a claim in a nonjudicial
foreclosure sale. Id. at 147.

 In Hoover v. Gregory, the underlying claim was based on faulty tax advice
rendered before litigation commenced. 835 S.W.2d at 670. Hoover, like Burnap,
interpreted Hughes narrowly, stating that the Hughes tolling provision only applies
to legal-malpractice cases in which the suit brought against the attorney arises in the
course of litigating the underlying claim. Id. at 675.

 The rationale behind our withdrawn opinion in Utica Insurance Co. is
inconsistent with Burnap and Hoover. Compare Utica Ins. Co., 902 S.W.2d at 147-48 (applying Hughes tolling rule when underlying malpractice claim not committed
during litigation) with Burnap, 914 S.W.2d at 147 and Hoover, 835 S.W.2d at 675
(not applying Hughes tolling rule when underlying alleged malpractice not committed
during litigation). Based on the conflict between the rationale behind our withdrawn
opinion in Utica Insurance Co. and the Burnap and Hoover opinions, it is impossible
to say that the supreme court's citation of Utica in Apex Towing Co. constitutes an
affirmative endorsement of the Utica rationale. We therefore must revisit--in light
of the supreme court's opinion in Murphy--whether the Hughes tolling rule applies
to malpractice claims arising out of transactional work performed by attorneys that
occurs before litigation commences.

Definitions of "Claim," "Prosecution," and "Defense"

 The Hughes tolling rule applies in certain situations "when an attorney commits
malpractice while providing legal services in the prosecution or defense of a claim
which results in litigation." Hughes, 821 S.W.2d at 156 (emphasis added). The
definitions of the words used by the supreme court in Hughes suggests that
transactional malpractice is not contemplated by the equitable-tolling doctrine.

 A "claim" is defined as "the assertion of an existing right; any right to payment
or to an equitable remedy." Black's Law Dictionary 240 (7th ed. 1999). The
Restatement (Second) of Judgments agrees with this definition, noting that the term
"claim" and its older cognate "cause of action" are references to units of litigation. 
Restatement (Second) of Judgments ch. 3, topic 2, tit. D (1982). Further, the
"transactional view of claim," to which the Restatement subscribes, defines the claim
extinguished by rules of bar or merger as including all of the plaintiff's rights "to
remedies against the defendant with respect to all or any part of the transaction, or
series of connected transactions, out of which the action arose." Restatement
(Second) of Judgments § 24(1) & cmt. a (1982).

 Based on these definitions, a distinction can be made, in the context of the
Hughes tolling rule, between malpractice claims arising from the litigation of a
client's previously existing claim and a malpractice claim arising from an attorney's
negligence in executing a business transaction. In the first instance, when a
malpractice claim is based on an attorney's error in prosecuting or defending a
client's claim, that claim existed before and independent of the attorney's
involvement. This is the type of "underlying claim" that merits the protection
afforded by Hughes, because "inconsistent litigation postures" must be taken to
resolve both disputes. See Hughes, 821 S.W.2d at 156. In the second instance, when
a malpractice claim is based on an error in transacting business of some kind, the
client's claim does not exist before or independent of the attorney's involvement. 
Rather, the reverse is true. The alleged malpractice itself becomes the "underlying
claim" to the subsequent litigation that it caused.

 Independently, an examination of the words "prosecution" and "defense" lead
to the same conclusion. To "prosecute" means to "commence and carry out a legal
action." Blacks Law Dictionary at 1237. "Defense" is defined as "[a] defendant's
method and strategy in opposing the plaintiff or prosecution." Id. at 430. Applying
these definitions, actions taken by attorneys in conducting transactional work do not
qualify as prosecution or defense of a claim.

Categories of Legal Malpractice

 It is unclear what the supreme court meant by "that category of legal-malpractice cases encompassed within its [Hughes'] definition." Apex Towing Co.,
41 S.W.3d at 122. Applying the definition of "claim" we have previously discussed,
we see four general categories of legal-malpractice cases: (1) the client has an accrued
claim, and the attorney allegedly commits malpractice either (a) before litigation
commences or (b) in the course of prosecuting or defending the claim in a
nonlitigation setting; (2) the client has an accrued claim, and the attorney allegedly
commits malpractice after litigation commences; (3) the client does not have an
accrued claim, and the attorney allegedly commits malpractice after litigation
commences; and (4) the client does not have an accrued claim, and the attorney
allegedly commits malpractice before litigation commences.

 1. The client has an accrued claim and the attorney allegedly commits
malpractice either (a) before litigation commences or (b) in the course
of prosecuting or defending the claim in a nonlitigation setting.

 With respect to the first category, the Hughes tolling rule applies to situations
in which the client has an accrued claim and the attorney allegedly commits
malpractice before litigation commences. See Aduddell, 821 S.W.2d at 159 (applying
Hughes to legal-malpractice claim arising from attorney's failure to file lawsuit
before extinguishment of claim by limitations).

 This category also includes situations in which the client has an accrued claim
and the attorney allegedly commits malpractice in the course of prosecuting or
defending the claim in a nonlitigation setting. See Gulf Coast Inv. Corp., 821 S.W.2d
159. Gulf Coast presumably had an existing contract lien, which it foreclosed at a
nonjudicial sale. Id. at 160. See generally Tex. Prop. Code Ann. § 51.002 (Vernon
1995) (procedure for sale of property under contract lien). Gulf Coast's attorneys
failed to give proper notice of the nonjudicial foreclosure sale, and as a result, Gulf
Coast was forced to defend itself in a wrongful-foreclosure action. 821 S.W.2d 160.

 Finally, this category includes Hughes itself. 821 S.W.2d at 157. In Hughes,
the attorney's alleged malpractice occurred in naming himself rather than the
Hugheses as temporary managing conservator of the child in the affidavit of
relinquishment of parental rights. Id. at 155. This alleged malpractice occurred
before the filing of the adoption proceeding. Id. The supreme court obviously chose
to view the term "claim" in a pragmatic light in Hughes, as technically the adopting
couple had no existing right, i.e., claim, to adopt.



 2. The client has an accrued claim and the attorney allegedly commits
malpractice after litigation commences.

 With respect to the second category, there is abundant authority, from both the
supreme court and the courts of appeals, holding that the Hughes tolling rule applies
in such cases. Vanasek, 53 S.W.3d at 345-46; Apex Towing Co., 41 S.W.3d at 119,
123; Sanchez, 898 S.W.2d at 288; Am. Centennial Ins. Co., 843 S.W.2d at 483 ;
Edwards, 9 S.W.3d 310, 311, 314 (Tex. App.--Houston [14th Dist.] 1999, pet.
denied); Guillot v. Smith, 998 S.W.2d 630, 631, 633 (Tex. App.--Houston [1st Dist.]
1999, no pet.); Farah, 927 S.W.2d at 669, 679; Washington v. Georges, 837 S.W.2d
146, 148 (Tex. App.--San Antonio 1992, writ denied).

 3. The client does not have an accrued claim and the attorney allegedly
commits malpractice after litigation commences.

 We are unaware of any published opinions that address this category.

 4. The client does not have an accrued claim and the attorney allegedly
commits malpractice before litigation commences.

 As to the fourth category of cases, the class in which Utica Insurance Co.,
Burnap, and Hoover fit, the supreme court has not yet definitively spoken. However,
the reasoning of the supreme court in Murphy discredits the rationale of our
withdrawn opinion in Utica Insurance Co., if Murphy stands for something more than
merely excluding alleged accounting malpractice from the Hughes tolling rule. 
Murphy, 964 S.W.2d at 272. Although the citation in Apex Towing Co. of Utica,
Burnap, and Hoover certainly has interjected some ambiguity, we believe that the
supreme court will not apply the Hughes tolling rule to a malpractice claim arising
out of transactional work performed by attorneys that occurs before litigation
commences.

 Finally, the unresolved conflict between the rationale in Utica Insurance Co.
and the Burnap and Hoover opinions requires us to note the policy concerns raised
in Hughes, notwithstanding the supreme court's direction to simply apply the Hughes
tolling rule. Apex Towing Co., 41 S.W.3d at 122.

 The rationale behind the Hughes tolling rule suggests that Hughes does not
apply when an attorney allegedly commits malpractice by negligently drafting
documents that are not connected with any existing litigation at the time of their
creation. See Hughes, 821 S.W.2d at 157. In Hughes, the court noted that if a person
is forced to file a malpractice suit against an attorney while the underlying claim is
still on appeal, that individual will be forced to take inconsistent positions, which will
compromise the likelihood of success in both suits. Id. at 157. This type of conflict
does not arise when the underlying claim is based on transactional work performed
by an attorney. See Burnap, 914 S.W.2d at 147.

 Accordingly, we conclude that the rationale behind the holding in our
withdrawn Utica Insurance Co. opinion has been discredited by the supreme court's
opinions in Apex Towing Co. and Murphy. We hold the Hughes tolling rule does not
apply to malpractice claims based on errors committed by attorneys in the course of
conducting transactional work. Here, Clark's alleged malpractice was in drafting the
Agreement, which is transactional work. Clark did not draft the Agreement in the
prosecution or defense of a claim that results in litigation. Following Apex Towing
Co. and Murphy, we hold the Hughes tolling rule does not apply to Vacek's situation.

Factual sufficiency of trial court's discovery-rule finding

 Having disposed of Vacek's two tolling arguments, we return to its factual-sufficiency challenge to the district court's finding that Vacek's malpractice claims
against Clark and his law firm accrued before July 27, 1997. The district court was
obligated to answer the discovery-rule issue: when did Vacek know, or exercising
reasonable diligence, when should it have known of the facts giving rise to its causes
of action against Clark and his law firm? See HECI Exploration Co. v. Neel, 982
S.W.2d 881, 886 (Tex. 1998). The district court found that date to be before July 27,
1997, relying no doubt on Vacek's July 25, 1997 letter terminating Clark as Vacek's
lawyer. After reviewing the entire record, we hold the evidence supporting the
district court's findings is not so weak as to be clearly wrong and manifestly unjust.

 We overrule issue one.


Breach-of-contract claim

 In issue two, Vacek argues in part that the district court incorrectly concluded
that Vacek's breach-of-contract claim is subsumed into a negligence claim and is
barred by limitations, citing our opinion in Jampole v. Mathews, 857 S.W.2d 57 (Tex.
App.--Houston [1st Dist.] 1993, writ denied). We do not agree that Jampole applies
to this case.

 In Jampole, we recognized a cause of action for breach of contract independent
of a legal-malpractice claim. Id. at 62. That case, however, limited this distinction
to actions against attorneys for excessive legal fees. Id.; see Greathouse v.
McConnell, 982 S.W.2d 165, 172 n.2 (Tex. App.--Houston [1st Dist.] 1998, pet.
denied). Breach-of-contract claims for legal malpractice are in the nature of tort
actions, and the applicable statute of limitations is two years. See Judwin Props., Inc.
v. Griggs & Harrison, 911 S.W.2d 498, 506 (Tex. App.--Houston [1st Dist.] 1995,
no writ).

 We overrule that portion of issue two which alleges that the district court
incorrectly concluded that Vacek's breach-of-contract claim is subsumed into a
negligence claim and is barred by limitations.

 In the remainder of issue two and in issues three, four, five, and six, Vacek
claims the district court's findings on the merits of the case are factually insufficient:
breach-of-contract claim (remainder of two); DTPA claim (three); negligence claim
(four); breach-of-fiduciary-duty claim (five); and proximate, producing, and legal
cause findings (six) . Because we hold that Vacek's claims are barred by limitations,
we need not reach these issues.

Conclusion


 We affirm the district court's judgment.



Sherry J. Radack

Justice


Panel consists of Justices Mirabal, Nuchia, and Radack.

Publish. Tex. R. App. P. 47.4
1. We recognize the novelty of raising statute-of-limitations tolling issues in the
context of a factual-sufficiency discussion, and we do not commend this
practice to the bar. 
2. The two-year statute of limitations applies to legal-malpractice causes of
action. Willis, 760 S.W.2d at 644; see Tex. Civ. Prac. & Rem. Code Ann. §
16.003(a) (Vernon Supp. 2002). The statute provides that an injured client
must bring suit not less than two years after the day the cause of action accrues. 
Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2002). A
cause of action for legal malpractice generally accrues when the client sustains
a legal injury. Hughes, 821 S.W.2d at 156. In cases in which the discovery
rule applies, the limitations period does not begin running until the client
discovers--or should have discovered through the exercise of reasonable care
and diligence--the facts establishing the elements of the client's cause of
action. Willis, 760 S.W.2d at 646.
3. Normally we would neither cite nor discuss an opinion designated for
publication that was later withdrawn from publication. See Tex. R. App. P.
47.7. Unfortunately, the Utica Insurance Co. opinion is printed in the South
Western Reporter and there is no indication in either West's Texas Subsequent
History Table or Shepard's Texas Citations that the opinion has no
precedential value. Finally, the supreme court, in Apex Towing Co., has cited
Utica as if it were precedential. We, therefore, discuss the Utica opinion in
this appeal in the context of analyzing the supreme court's opinion in Apex.
4. The Eighth and Fourteenth Courts of Appeals have discussed the stare decisis
effect of the judicial dictum in Murphy. Eiland v. Turpin, Smith, Dyer, Saxe
& McDonald, 16 S.W.3d 461, 469-70 (Tex. App.--El Paso 2000), pet.
granted, judgm't vacated w.r.m. per curiam, 46 S.W.3d 872 (Tex. 2001)
(following Murphy); Edwards v. Kaye, 9 S.W.3d 310, 314 (Tex.
App.--Houston [14th Dist.] 1999, pet. denied) (not following Murphy).